ROBUCK & ORR *et al.*, plaintiffs in error, *vs.* JOHN HARKINS *et al.*, defendants in error.

Bills for a new trial and to restrain a judgment at law, are not favored by Courts of Equity. In order to obtain the assistance of the Court in such cases, the complainant must shew *full diligence*, unmixed with negligence, on his part.

Bill for new trial. Demurrer. Decided by Judge PARROTT. Gordon Superior Court. October Term, 1868.

Robuck & Orr had seventeen Justice's Court *fi. fas.* against Thomas Harkins and James Harkins, each for $30 00, besides interest and costs, founded on judgments, dated the 4th of April, 1856. They had them levied on lot No. 190, in said county, on the 26th of October, 1857, as the property of Thomas Harkins. John Harkins filed a claim to said land, and employed Dawson A. Walker and M. Francis as his attorneys. Walker went upon the bench, and Francis died. Warren Akin was then employed. The case was continued from time to time during the war, and did not come to trial till April, 1867. On the trial, the levying officer testified that Thomas Harkins was in possession of the land when the levy was made; one of the witnesses to the deed

testified, that at the time of the delivery of the deed from Thomas Harkins to John Harkins, no money was paid; and one Millholland, (who was a partner with Thomas Harkins, in the firm of Millholland, Harkins & Co.,) testified that Harkins said that the witness and the other partner had wasted the firm assets; that he, Thomas Harkins, had paid his part of said debts, and intended to transfer his land to John Harkins, to prevent the firm creditors from recovering any thing from him.    Here the plaintiff in *fi. fa.* closed.

The claimant read in evidence his said deed; showed by one Jones, that claimant paid to him, for the use of Thomas Harkins, $300, upon a note originally for about $700, made by John Harkins, payable to Thomas Harkins, and the $300 was credited thereon, and Thomas Harkins said to Jones that the note was given for said land.

One O'Callaghan testified that he rented the premises, in 1856, from John Harkins, and paid rent to him as his landlord.

Claimant, in his own behalf, testified, that when he bought the land, he gave his note as a temporary settlement only, and agreed with Thomas Harkins that he, John, would go to Rome, Georgia, and pay off said Thomas Harkins's debts, and would then take a credit for some $700, money loaned by him to Thomas; that he did so, and when he returned to Calhoun, made a final settlement, by which he was in Thomas Harkins's debt some $700, for which he gave his note at twelve months, which he fully paid off; that the sale was not made to delay creditors, but because Thomas Harkins, Jr., son of Thomas Harkins, Sr., had returned to North Carolina, and he wished to realize on said land; that because his son was about to move, he did not wish to hold said land longer; that at the date of his purchase from Thomas Harkins, Sr., (23d of August, 1855,) Thomas Harkins, Sr. was not involved in debt, and there was no reasonable prospect of his failure; he did fail about six months after the purchase, because of the burning of a college of which he was the builder; and that at the date of the purchase, he, claimant, was worth $10,000, and amply able to pay for said land.

Claimant also showed by other witnesses, that he had paid the debts of Thomas Harkins, Sr., as stated.

The jury found the premises subject to said judgments.

This trial was during the first week of the Court, which continued for two weeks. The claimant intended moving for a new trial during the next week. He went to Rome, Georgia, on business, and was taken sick, so that he could not return to Court; he sent certificates of his physicians as to his illness to Akin, at Court, but Akin's wife was taken sick and he went home. Before he left, however, he made out a motion for new trial, and left it with James Harkins, and left a note for Col. Mitchel, an attorney of the Court, stating that it had been agreed that this motion should be heard at Whitfield Court, and asked him to take an order that the case should be heard there, and to go there with all the papers in the case.

The grounds in the motion made out by Akin were substantially these: 1st. Because the Court overruled the objection of claimant to the said testimony of Millholland: 2d. Because he had admitted in evidence notices dated ———— day of December, 1856, and signed "Thomas Harkins," notifying his creditors of his intention to take the benefit of the Honest Debtor's Act. It was not shown that Thomas Harkins signed the notices, but his attorney had said notices served. 3d. Because the Court refused to charge, that if John Harkins rented the land, a short time after he bought it, to O'Callaghan, and he took control of it, the fact that Thomas Harkins's wife and children remained on the place with O'Callaghan, is not a badge of fraud. 4th. Because the Court refused to charge, that if O'Callaghan rented the land from John Harkins, he had the right to put whom he pleased in possession, and even had he allowed Thomas Harkins to remain there the whole year, this fact would not be a badge of fraud as to John Harkins. 5th. Because the Court refused to charge that if a deed is made and witnessed as the law directs, and immediately handed to the Clerk to record, and it is recorded a short time thereafter, this does not make it fraudulent, on the ground *that it is secret.* 6th. Because the Court refused to charge, that the fact that Thomas Harkins

remained on the land from the 23d of August, 1855, till the 1st of November, 1855, when the lease commenced, is no evidence of fraud, unless his remaining in possession misled Robuck & Orr, and they credited Thomas Harkins between those dates; and 7th. Because the verdict is contrary to the evidence, etc.

But for some reason (not disclosed) no such order was taken, and this motion was never filed nor presented to the Court. In October, 1867, one hundred and thirty acres of the land was sold at sheriff's sale under said *fi. fas.*, and bid off by Robert M. Young, for $1,197 50. In January, 1868, the sheriff went to put Young in possession, but by his saying he would enjoin him, etc., he was prevented from doing so, but afterwards, in his absence, the sheriff put Young in, and he put his tenant in possession. Meanwhile, to-wit: on 25th May, 1861, John Harkins conveyed said land to Winfield Scott, and on the 17th December, 1861, Scott conveyed it to Wesley M. Neal. Now, said Neal filed his bill averring the foregoing facts, and that John Harkins paid Thomas Harkins, Sr., his father, $1,700 00 in cash for said land; that Thomas Harkins, at the date of said sale, did not owe Robuck & Orr anything; that Thomas Harkins went out of possession of the premises in October, 1855; that John Harkins immediately went into possession, by his tenant, O'Callaghan, and by himself took possession in January, 1857, built a house on the adjoining lot, worked this one, and remained there till his home was burned up in 1861; that he remained in possession till he sold to Scott; that Thomas Harkins, Sr. was not in possession when the said levy was made, but that, at that time, John Harkins was building said house, and his tenants, Richard Cain and Stephen Cain, lived on said lands; that if any such remark was made, as that testified to by Millholland, it cannot, in law, affect Neal; that said testimony was illegal, because Thomas Harkins, Sr. was dead, and because Millholland, as partner, was interested in condemning the property; that Mitchell was not employed in said cause; that John Harkins and Scott, both being insolvent, he cannot recover what he paid for said land, and

that Young has as yet paid nothing on his said bid. He did not aver he had paid anything, but his copy deed stated that he had paid $3,750 00.

Upon these facts, joining John Harkins as a complainant, he prayed that Robuck & Orr be enjoined from further proceedings with their *fi. fas.*, and Young from paying anything on his bid, and that there should be a new trial in said claim case, and that Young be made to restore him possession of the premises.

Judge Milner granted an order requiring the defendants to show cause why said prayer should not be granted. They demurred to the bill upon the ground that there was no equity in the same. Judge Parrott overruled the demurrer, and this is assigned as error.

W. H. DABNEY for plaintiff in error.

SMITH & BRANHAM, J. W. UNDERWOOD, for defendant in error.

WARNER, J.

This was a bill filed for a new trial, and to restrain, by injunction, the judgment of a court of law upon the several grounds set forth in the record. Bills of this description are not, as a general rule, much favored in a court of equity. 2d Story's Equity, 174, sec. 888. In *Stroup vs. Sullivan & Black*, 2 *Kelly's R.*, 275, this Court stated the rule to be, that a court of equity will not grant relief against a judgment at law, on the ground of its being unconscientious, " unless the defendant in the judgment was entirely ignorant of his defence pending the suit, or unless, without any *default* or *neglect on his part,* he was prevented by fraud, or accident, or the act of the opposite party, from availing himself of his defence, or by some *unavoidable* necessity." The defendant, in the Court below, demurred to the bill, which demurrer was overruled, and that is the assignment of error here. In our judgment, the complainants' bill does not make such a case as entitles them to the relief which they

seek.   There is no reason given why the complainants did not except to the rulings of the Court on the trial of the claim case, within thirty days after the adjournment of the Court, so as to have had the errors complained of, corrected by this Court, or why they remained *inactive* until after the land was sold by the sheriff, before filing this bill for a new trial.   Besides, if the claimant had exercised proper *diligence* after the trial of the claim case, he could have obtained all the relief in the common law court which he now seeks here, under the provisions of the 3668th and 3670th sections of the Revised Code.   Let the judgment of the Court below be reversed.